UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GLORIA J. DOUGLAS,                    )
                                      )
                  Plaintiff,          )
                                      )
           v.                         )     No.  4:12CV2111 JAR
                                      )                   (FRB)
CAROLYN W. COLVIN, Acting             )
Commissioner of Social Security,      )
                                      )
                  Defendant.          )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

    This cause is before the Court on plaintiff's appeal of
an adverse ruling of the Social Security Administration.  All
pretrial matters were referred to the undersigned United States
Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate
disposition.

**I.  Procedural History**

    On May 3, 2010, plaintiff Gloria J. Douglas filed an
application for disability insurance benefits (DIB) pursuant to
Title II, 42 U.S.C. §§ 401, et seq., and an application for
supplemental security income (SSI) pursuant to Title XVI of the
Social Security Act, 42 U.S.C. §§ 1381, et seq., in which she claimed

she became disabled on December 1, 2006. (Tr. 166-69, 170-76.)[1] On initial consideration, the Social Security Administration denied plaintiff's claims for benefits. (Tr. 88-89, 90-91.) On August 29, 2011, a hearing was held before an ALJ at which plaintiff testified and was represented by counsel. A vocational expert also testified at the hearing. (Tr. 39-76.) On November 8, 2011, the ALJ issued a decision denying plaintiff's claims for benefits, finding plaintiff able to perform her past relevant work as a house cleaner. (Tr. 8-17.) On September 7, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3.) The ALJ's determination thus stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).

Plaintiff now seeks review of the Commissioner's final adverse determination arguing that the ALJ's decision is not supported by substantial evidence on the record as a whole. Specifically, plaintiff claims that the ALJ erred in finding plaintiff's subjective complaints not to be credible. Plaintiff

[1] Plaintiff was previously determined to be disabled for the period from December 1, 2006, to October 9, 2008. In a decision dated January 8, 2009, an Administrative Law Judge (ALJ) found that, as of October 10, 2008, plaintiff's condition had improved and she was no longer disabled. In a decision dated April 19, 2010, another ALJ determined that plaintiff was not under a disability since January 8, 2009. The Appeals Council denied plaintiff's request for review of this decision. The ALJ here determined not to reopen these prior determinations. (Tr. 14.) Plaintiff does not challenge this decision. As such, the relevant period for determining disability in this cause is that beginning on April 19, 2010.

also contends that the ALJ erred in her determination of plaintiff's residual functional capacity (RFC) by failing to consider all of plaintiff's functional limitations.  Plaintiff asks the Court to reverse the decision of the Commissioner and render a fully favorable decision, or remand the matter for further proceedings.

Because the ALJ committed no legal error in this cause and her decision is supported by substantial evidence on the record as a whole, the determination that plaintiff was not under a disability since April 19, 2010, should be affirmed.

## II.  Testimonial Evidence Before the ALJ

A.  Plaintiff's Testimony

At the hearing on August 29, 2011, plaintiff testified in response to questions posed by the ALJ and counsel.  Plaintiff is sixty-two years of age.  Plaintiff stands five feet, two inches tall and weighs 140 pounds.  Plaintiff graduated high school; earned an associate's degree in science, commercial art and advertising; and earned a bachelor's degree in art.  (Tr. 44-46.)  Plaintiff is ambidextrous but generally is right-hand dominant.  (Tr. 52.) Plaintiff lives with her eighty-year-old father.  (Tr. 60.)

Plaintiff's Work History Report shows plaintiff to have worked as a self-employed artist from 1992 to 1998.  From 1990 to 2006, plaintiff worked cleaning homes.  Plaintiff testified that she also worked as a home health aide during this period, performing

chores and running errands for her clients. On dates unknown, plaintiff worked in an office taking care of plants, at Arby's, and at Popeye's Chicken. Plaintiff testified that she stopped working in 2006 when she was diagnosed with cancer. (Tr. 46, 257.)

Plaintiff testified that she was currently unable to work as a house cleaner because her cancer treatment rendered her unable to physically perform the work, such as pushing and pulling a vacuum cleaner, running errands, and driving. Plaintiff testified that she focuses on her art, but that she is unable to participate in art shows because of chest pains and the unpredictability of adverse symptoms. Plaintiff testified that she also experiences arthritis associated with weather changes and cramping associated with eating. Plaintiff testified that when she feels well, she can work on her art for a couple of hours, nap, and then continue with her artwork. Plaintiff testified that she naps for at least an hour because of her fatigue. Plaintiff testified that cramping, fatigue, and the unpredictable nature of her health conditions prevent her from working. (Tr. 48-50, 57.)

Plaintiff testified that she experiences cramping in her chest that feels like an extreme muscle spasm and that her shoulders lock when she experiences such cramping. Plaintiff testified that she is unable to move during an episode and must wait for the sensation to pass. Plaintiff testified that eating, laughing, and sitting in

hard chairs trigger the cramps, and that they last in duration from five minutes to an hour. Plaintiff testified that the pain associated with the cramping is at a level ten on a scale of one to ten and that the episodes are beginning to last longer in duration. Plaintiff testified that she has been given pain medication for the condition but that she does not take the medication every day because it causes her to become more tired. (Tr. 51-53, 58-59.)

Plaintiff testified that she underwent laparoscopic knee surgery about ten years prior at which time it was discovered that she had arthritis. Plaintiff testified that cool and damp weather exacerbates the arthritis pain in her knees. Plaintiff testified that sitting in a car for about an hour causes her discomfort as well. Plaintiff testified that she experiences pain in her knees at a level eight to ten on a scale of one to ten. Plaintiff testified that she has not had any cortisone injections administered because her doctor does not like them and indicated that they may not make much of a difference. (Tr. 63-66.)

Plaintiff testified that she currently takes Oxycontin for pain. Plaintiff testified that she used to take Aromasin but that she experienced abdominal pain and frequent urination as side effects. Plaintiff testified that upon stopping Aromasin, she was prescribed Tamoxifen but stopped that medication as well because of side effects. (Tr. 55-56.)

Plaintiff testified that she also experiences frequent urination such that she must use the restroom every hour. Plaintiff testified that she was advised to stop drinking after 7:00 p.m. but that she continues to experience frequent urination throughout the night. Plaintiff testified that stopping certain medication helped some in that she used to have to use the restroom every thirty minutes. (Tr. 56-57.)

Plaintiff testified that she has trouble with her memory and cannot remember some things. Plaintiff testified that her memory problems worsened after her cancer surgery. (Tr. 60.)

Plaintiff testified that she feels depressed because of her physical condition but has not sought treatment. (Tr. 62, 66.)

As to her exertional abilities, plaintiff testified that she can sit no longer than an hour. Plaintiff testified that she can carry a gallon of milk but not a big bag of groceries. Plaintiff testified that her doctor has limited her to lifting no more than five to ten pounds since her mastectomy. (Tr. 60-62.)

As to her daily activities, plaintiff testified that she checks on her father throughout the day to make sure he has eaten and has taken his medication. Plaintiff testified that she makes her bed and does the dishes when she has energy. Plaintiff testified that her sister does the basic cleaning such as mopping the floors. Plaintiff testified that she does some light shopping but does not

carry big bags.  (Tr. 60-61.)  Plaintiff testified that she has a driver's license and is able to drive.  (Tr. 44-45.)

B.  Testimony of Vocational Expert

At the hearing on August 29, 2011, Reva Payne, a vocational expert, testified in response to questions posed by the ALJ and counsel.

Ms. Payne classified plaintiff's past work as an artist as sedentary with an SVP (specific vocational preparation) level 7; as a housekeeper as light with an SVP level 2; and as a home health aide as medium or heavy with an SVP level 3.  Ms. Payne did not consider plaintiff's past work in the fast food industry inasmuch as it was performed more than fifteen years prior.  (Tr. 68-69.)

The ALJ asked Ms. Payne to consider a person of plaintiff's age, education, and past work experience and to consider that such a person was able to perform light work.  The ALJ then asked Ms. Payne to assume the person to be further limited

> in that they can only frequently push, pull, and reach in all directions with their upper dominant extremity and they have no limitation – no such limitation with their upper non-dominant extremity.  In addition, the person needs access at the worksite to plumbed restroom facility, so no type of construction job where there's Johnny-on-the-spots.

(Tr. 70.)

Ms. Payne testified that such a person could perform plaintiff's past

relevant work as an artist and housekeeper.  (Tr. 70.)

The ALJ then asked Ms. Payne to further assume that the same individual could "never or only minimally climb stairs and never climb ropes, ladders, and scaffolds, and she can only occasionally kneel, crouch, and crawl, and she should avoid concentrated exposure to hazards such as heights and machinery."  Ms. Payne responded that such a person could perform plaintiff's past work as an artist.  (Tr. 70-71.)

Finally, the ALJ asked Ms. Payne to assume this same individual would "need to lie down for 45 minutes each day due to medical issues."  (Tr. 71.)  Ms. Payne testified that such a person could not perform plaintiff's past work as an artist on a competitive basis nor any other work in the regional or national economy.  Ms. Payne also testified that the frequency with which employees are permitted to take unscheduled bathroom breaks is usually pursuant to an agreement between the employee and his/her employer.  (Tr. 71-72.)

In response to questions posed by plaintiff's counsel, Ms. Payne testified that jobs performed at the SVP level of 7 are usually performed by professionals, such that absences from work may be made up at home or after hours and thus are tolerated at a higher level.  Ms. Payne testified that missing work for three days or more per month for such an individual may be an issue.  (Tr. 73-74.)

### III.  Medical Records

On July 11, 2007, plaintiff underwent right mastectomy for breast cancer after which she underwent chemotherapy.  Plaintiff also underwent radiation therapy to the right chest wall from December 7, 2007, through January 14, 2008.  Plaintiff complained of nocturia and frequency of urination during her radiation treatment, which was thought to be a urinary tract infection.  On February 29, 2008, plaintiff reported during follow up that she felt well but was experiencing some shortness of breath.  Dr. Simon Powell noted the condition to be very mild and instructed plaintiff to advise him if it worsened.  (Tr. 329-35.)

Plaintiff visited Andre Wineland at Barnes Jewish Hospital on February 9, 2010, with reports of symptoms associated with seasonal allergies.  No other complaints were noted.  Plaintiff was noted to be status post breast cancer with resection and chemotherapy/radiation treatment.  Plaintiff's current medications were noted to include Fluticasone Propionate[2] and Aromasin.[3]  (Tr. 287.)

Plaintiff visited Dr. Mrudula Penta at Barnes Jewish

---

[2] Fluticasone is a steroid used to reduce swelling in the airways. Medline Plus (last reviewed Aug. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a699063.html>.

[3] Aromasin is used to treat early breast cancer in women who have experienced menopause.  Medline Plus (last reviewed Sept. 1, 2010)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a607006.html>.

Hospital on March 23, 2010, for follow up of serous otitis media. No other complaints were noted. Plaintiff was diagnosed with allergic rhinitis and very mild presbycusis. (Tr. 286.)

On May 11, 2010, plaintiff visited Washington University School of Medicine-Oncology (Washington University-Oncology) for follow up. Plaintiff reported doing well but that she was experiencing a moderate amount of stress. Plaintiff reported having intermittent, severe fatigue. Plaintiff reported feeling well on some days and being exhausted after breakfast on other days for which she "lays around the house most of the day." Plaintiff reported her fatigue to be at a level ten out of ten. Plaintiff reported that she continued to do her artwork. Other than fatigue, plaintiff reported no new or specific symptoms. Nurse Practitioner Reida McDowell noted plaintiff's current medications to include calcium, vitamin D, Oxycodone,[4] and Aromasin. Physical examination was unremarkable. Noting that a doctor at the Community Health Center opined that plaintiff's fatigue may be related to her Aromasin therapy, Nurse McDowell instructed plaintiff to stop Aromasin for up to three weeks, maintain a daily diary as to her level of fatigue, restart the Aromasin after three weeks, and maintain a daily diary thereafter as to her level of fatigue. It was noted that plaintiff

---

[4] Oxycodone is used to relieve moderate to severe pain. Medline Plus (last revised Sept. 15, 2013)< http://www.nlm.nih.gov/medlineplus/

was scheduled to return in six months.  (Tr. 321-23.)

Plaintiff returned to Washington University-Oncology on October 26, 2010, and reported to Nurse McDowell that she noticed a lot of her fatigue to be associated with the Aromasin, as well as frequent urination.  Nurse McDowell noted plaintiff to have been off of the Aromasin for several months, and plaintiff reported feeling as though her body was healing.  Plaintiff rated her fatigue to be at a level ten at times.  Nurse McDowell discussed the use of Tamoxifen, but plaintiff expressed general reservations about the medication.  Plaintiff's medications were noted to be calcium, vitamin D, and Oxycodone.  It was noted that plaintiff continued to work on her art, which she reported to be very satisfying, and that she had an upcoming art show at the University City Public Library. Physical examination was unremarkable.  Nurse McDowell noted plaintiff to be improving generally, but that she continued to complain of profound fatigue although with less frequent episodes. Plaintiff also reported having less nocturia.  Plaintiff reported having some pain and popping in her left shoulder which she attributed to arthritis, but Nurse McDowell noted plaintiff to essentially have normal range of motion.  Plaintiff was instructed to apply heat to the affected area and to take Aleve.  It was noted that plaintiff had not seen a gynecologist in years, and Nurse McDowell encouraged

---

druginfo/meds/a682132.html>.  A review of the record does not show

plaintiff to have a gynecological examination in relation to her urinary complaints. Plaintiff was prescribed Anastrozole[5] for her adjuvant endocrine therapy and was instructed to return in six months for follow up. (Tr. 316-18.)

The results of a bone density examination performed October 26, 2010, were consistent with osteopenia. Decreased bone density in the left femur and increased bone density in the lumbar spine was noted. (Tr. 314-15.)

Plaintiff visited People's Health Center on December 9, 2010, for gynecological examination. Plaintiff's current medications were noted to be Flonase, Sudafed, and Aromasin. Plaintiff reported having no pain. Examination showed uterine and cervical prolapse. Dr. LaTashia Walker ordered a pelvic ultrasound and instructed plaintiff to return for consult after such testing. (Tr. 341-45.)

Plaintiff visited People's Health Center on March 9, 2011, with complaints related to allergies and for follow up of hyperlipidemia. Plaintiff rated her pain to be at a level two. Physical examination was unremarkable. Dr. Mollie Hossfeld instructed plaintiff to increase her physical activity. (Tr.

---

when this medication was prescribed or by whom.
[5] Anastrozole is used with other treatments to treat early breast cancer in women who have experienced menopause. Medline Plus (last revised Mar. 15, 2012)<http://www.nlm.nih.gov/medlineplus/druginfo/meds/a696018.html>.

337-40.)

Plaintiff returned to Washington University-Oncology on April 12, 2011. It was noted that plaintiff stopped her adjuvant endocrine therapy after her last visit in October 2010 and reported feeling much better after stopping Anastrozole. Plaintiff reported that she filled the prescription for Tamoxifen but was afraid to take the medication. It was noted that plaintiff also stopped her vitamin D therapy. Nurse McDowell noted review of plaintiff's systems to be extensively positive with plaintiff's main complaints noted to be continued cramping in the chest muscles and dull headache likely related to allergies. It was noted that plaintiff's fatigue was improving. Plaintiff rated her pain at a level eight. Plaintiff rated her fatigue at a level eight. Physical examination was unremarkable. Plaintiff was encouraged to restart endocrine therapy with Anastrozole and to walk regularly. Nurse McDowell noted the cause of plaintiff's chest muscle spasms to be unclear, noting them to be intense but to last for short periods of time. Plaintiff was instructed to return in six months for follow up. (Tr. 308-10.)

## IV.   The ALJ's Decision

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through September 30, 2011. The ALJ also found that plaintiff had not engaged in substantial

gainful activity since December 1, 2006, the alleged onset date of disability. The ALJ found plaintiff's impairments of arthritis of the knee and status post breast cancer treatment to be severe, but that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-14.) The ALJ determined plaintiff to have the RFC to perform light work except that she could "only frequently push, pull, and reach in all directions with her upper right extremity and requires access to plumbed restroom facilities." (Tr. 14.) The ALJ found plaintiff able to perform her past relevant work as a house cleaner. Accordingly, the ALJ determined plaintiff not to have been under a disability from April 19, 2010, through the date of the decision. (Tr. 14-17.)

### V. Discussion

To be eligible for Social Security DIB and SSI under the Social Security Act, plaintiff must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If the claimant is working, disability benefits are denied.  Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities.  If the claimant's impairment(s) is not severe, then she is not disabled.  The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1.  If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled.  At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work.  If so, the claimant is not disabled.  Finally, the

Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Secretary of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

The Court must also consider any evidence which fairly detracts from the Commissioner's decision. Coleman, 498 F.3d at 770; Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. Pearsall, 274 F.3d at 1217 (citing Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." Weikert v. Sullivan, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); see also Jones ex rel. Morris v. Barnhart, 315 F.3d 974, 977 (8th Cir. 2003).

The Court now turns to plaintiff's specific challenges to the Commissioner's final decision.

A.    Credibility Determination

In her decision, the ALJ found plaintiff's medically determinable impairments to reasonably be expected to cause plaintiff's alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of such symptoms not to be credible to the extent they were inconsistent with the RFC assessment as determined by the ALJ.    (Tr. 15.)    Plaintiff claims that the ALJ erred by failing to conduct her credibility analysis in accordance with the relevant regulations and case law and by failing to identify specific testimony and/or evidence that conflicted with plaintiff's subjective complaints.

When determining a claimant's RFC, the ALJ must first evaluate the credibility of the claimant's subjective complaints. Ramirez v. Barnhart, 292 F.3d 576, 580-81 (8th Cir. 2002); Nishke v. Astrue, 878 F. Supp. 2d 958, 978 (E.D. Mo. 2012).    When undergoing such evaluation, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions.    20 C.F.R. §§

404.1529, 416.929. See also Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984 (subsequent history omitted). Although the ALJ may not discount subjective complaints on the sole basis of personal observation, she may disbelieve a claimant's complaints if there are inconsistencies in the evidence as a whole. Polaski, 739 F.2d at 1322. The "crucial question" is not whether the claimant experiences symptoms, but whether her credible complaints prevent her from performing work. Gregg v. Barnhart, 354 F.3d 710, 713-14 (8th Cir. 2003).

When, on judicial review, a plaintiff contends that the ALJ failed to properly consider her subjective complaints, "the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." Masterson v. Barnhart, 363 F.3d 731, 738-39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. Id. at 738; see also Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991). While an ALJ need not methodically discuss in detail each credibility factor, she must make an express credibility

determination explaining the reasons for discrediting the complaints. <u>Wagner v. Astrue</u>, 499 F.3d 842, 851 (8th Cir. 2007); <u>Goff v. Barnhart</u>, 421 F.3d 785, 791 (8th Cir. 2005). Where such a determination is supported by the record as a whole, it should not be disturbed by this Court. <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000); <u>Reynolds v. Chater</u>, 82 F.3d 254, 258 (8th Cir. 1996); <u>see also</u> <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992) (administrative finding not required to be set aside when deficiency in opinion-writing technique has no bearing on outcome). The determination of a claimant's credibility is for the Commissioner, and not the Court, to make. <u>Tellez v. Barnhart</u>, 403 F.3d 953, 957 (8th Cir. 2005); <u>Pearsall</u>, 274 F.3d at 1218.

For the following reasons, the ALJ did not err in finding plaintiff's subjective complaints not to be credible.

Invoking 20 C.F.R. §§ 404.1567, 416.927, the ALJ explicitly addressed plaintiff's credibility in her decision and identified inconsistencies in the record which detracted from plaintiff's credibility. (Tr. 14-16.) The ALJ first noted the objective medical evidence not to support plaintiff's subjective complaints to the extent plaintiff claimed her conditions rendered her unable to work. This finding is supported by substantial evidence on the record as a whole. The record is devoid of any laboratory findings or medical signs shown by diagnostic techniques

demonstrating the level of disabling symptoms as alleged by plaintiff. The absence of an objective medical basis to support the degree of a claimant's subjective complaints is an important factor in evaluating the credibility of her testimony and complaints. Ramirez, 292 F.3d at 581. Although an ALJ may not reject a claimant's subjective complaints based solely on the objective medical evidence, such evidence is a useful indicator in making conclusions about the effect of symptoms on the claimant's ability to work. 20 C.F.R. §§ 404.1529(c), 416.929(c).

In addition to the lack of objective medical evidence, the ALJ also noted that plaintiff made her complaints of chest pain, fatigue, and frequent urination only to a nurse practitioner during her oncology visits and never sought any treatment therefor. Indeed, although plaintiff followed through on the nurse practitioner's recommendation that she visit a gynecologist for her urinary complaints, there is no indication in the treatment notes that plaintiff reported her urinary problems to the gynecologist during this visit. Further, there is no indication in the record that plaintiff underwent the recommended ultrasound examination as ordered by the gynecologist. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012) (claimant's failure to obtain treatment for certain symptoms inconsistent with subjective complaints that symptoms are disabling); Gulliams v. Barnhart, 393 F.3d 798, 802 (8th

Cir. 2005) (failure to follow recommended course of treatment weighs against a claimant's credibility). In addition, the ALJ noted that plaintiff reported her body to be "healing" after she stopped taking Aromasin, and a review of the record shows plaintiff to report her fatigue to have improved with this alteration in medication. See Renstrom, 680 F.3d at 1066 (allegations of disabling levels of pain inconsistent with record that showed that treatment could control the severity of symptoms). However, despite plaintiff being prescribed and instructed to take alternative endocrine therapy medication, the record shows plaintiff not to have abided by these instructions. See Gulliams, 393 F.3d at 802.

To the extent plaintiff claims her consistent work record favors her credibility, the record shows plaintiff to have had no earnings for the years 1992 through 1998, and less than $6,000.00 in yearly earnings for the years 1999 through 2004. See Woolf v. Shalala, 292 F.3d 576, 581-82 (8th Cir. 2002) (poor work history lessens credibility).

Finally, to the extent plaintiff contends that the ALJ failed to make specific findings as to plaintiff's credibility, a review of the ALJ's decision, as demonstrated above, shows that she expressly determined plaintiff's credibility upon consideration of all of the evidence and to have explained her reasons for discrediting plaintiff's subjective complaints. These reasons are supported by

-22-

substantial evidence on the record as a whole.  While the ALJ did not specifically discuss every credibility factor, she was not required to do so.  Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007).  Invoking 20 C.F.R. §§ 404.1529, 416.929, the ALJ explicitly discredited plaintiff's subjective complaints and gave good reasons for doing so.  Because these reasons are supported by substantial evidence on the record as a whole, the Court defers to this determination.  Casey, 503 F.3d at 696.

B.  RFC Determination

Plaintiff claims that the ALJ erred in her RFC determination by failing to include all of plaintiff's limitations, and specifically, limitations due to fatigue and poor concentration as well as her inability to lift in excess of ten pounds.

A claimant's RFC is what a claimant remains able to do despite her limitations.  29 C.F.R. §§ 404.1545, 416.945; Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001).  The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, including medical records, the observations of treating physicians and others, and the claimant's description of her limitations.  Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001); Dunahoo, 241 F.3d at 1039 (citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995)).  Because a claimant's RFC is a medical

question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." Hutsell, 259 F.3d at 712. The burden to prove the claimant's RFC, however, rests with the claimant and not the Commissioner. Pearsall, 274 F.3d at 1217.

A review of the medical records in their entirety shows the ALJ's challenged RFC findings not to be inconsistent with the evidence of record. No physician or other healthcare provider opined that plaintiff was impaired in her lifting ability or had limitations on account of fatigue or impaired concentration. See Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005). Nor is there medical evidence suggesting that there exist such limitations. See Ellis v. Barnhart, 392 F.3d 988, 995 (8th Cir. 2005). Instead, plaintiff's claim that she suffers such limitations is based only on her testimony and the subjective complaints she made to her healthcare providers. Where, as here, an ALJ properly discredits a claimant's subjective complaints, she need not include in the RFC determination asserted limitations which are based only on such complaints. Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010). The Eighth Circuit has recently recognized that this Court's role is to "review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations[.] . . . [W]e do not require an ALJ to mechanically list and reject every possible limitation." McCoy v. Astrue, 648 F.3d 605, 615 (8th Cir. 2011).

Plaintiff claims that there was insufficient evidence upon which the ALJ could have made her RFC determination and thus that the ALJ should have ordered a consultative examination to ensure a fully and fairly developed record. The undersigned disagrees. An ALJ is required to ensure a fully and fairly developed record. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (citing Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983)). However, this Court's inquiry is limited to whether plaintiff was prejudiced or treated unfairly by how the ALJ did or did not develop the record. Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993) (citing Phelan v. Bowen, 846 F.2d 478, 481 (8th Cir. 1988)). Absent unfairness or prejudice, remand is not warranted. Id.

In the instant cause, there was sufficient evidence in the record upon which the ALJ could base her RFC determination. The ALJ analyzed the medical and non-medical evidence of record and recognized that plaintiff's impairments imposed significant limitations. Plaintiff presents no credible evidence or argument demonstrating that she was more restricted than as determined by the ALJ. An ALJ is not required to disprove every possible impairment. McCoy, 648 F.3d at 612.

## VII.  Conclusion

For the reasons set out above on the claims raised by plaintiff on this appeal, the ALJ's determination is supported by

substantial evidence on the record as a whole and plaintiff's claims of error should be denied.   Inasmuch as there is substantial evidence to support the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.   Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).   Accordingly, the Commissioner's determination that plaintiff was not disabled from April 19, 2010, through the date of the ALJ's decision should be affirmed.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be affirmed and that plaintiff's Complaint be dismissed with prejudice.

The parties are advised that any written objections to this Report and Recommendation shall be filed not later than **November 27, 2013**.   Failure to timely file objections may result in waiver of the right to appeal questions of fact.   Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

_Frederick R. Buckles_

_____
UNITED STATES MAGISTRATE JUDGE

Dated this  _13th_  day of November, 2013.